**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION**

| | | |
|---|---|---|
| **HERITAGE GLOBAL NETWORK LOS ANGELES, INC.,** | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | **Case No. 3:23-cv-00685** |
| | ) | **Judge Aleta A. Trauger** |
| **TAYLOR WELCH *et al.*,** | ) | |
| **Defendants.** | ) | |

**MEMORANDUM and ORDER**

Before the court is the Motion for Partial Reconsideration of the Court's July15, 2026 Memorandum Order (Doc. No. 135) filed by plaintiff Heritage Global Networks Los Angeles, Inc. ("Heritage"). Citing Federal Rule of Civil Procedure 54(b), Heritage asks the court to reconsider and revise the court's July 15, 2026 Memorandum ("Memorandum" or "summary judgment Memorandum") (Doc. No. 125) and corresponding Order (Doc. No. 126) that, for the most part, denied the defendants' two summary judgment motions and allowed most of the plaintiff's claims to proceed to trial. The defendants have filed a joint Response in Opposition to the Motion for Reconsideration (Doc. No. 139), and the plaintiff has filed a Reply (Doc. No. 140). As set forth herein, the motion will be denied.

## I. LEGAL STANDARD – RULE 54 MOTION

The Federal Rules of Civil Procedure do not provide expressly for reconsideration of summary judgment rulings, but Rule 54 states that

> any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the

> entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.

Fed. R. Civ. P. 54(b). And it has long been recognized that courts have "inherent power to reconsider interlocutory orders and reopen any part of a case before entry of a final judgment." *Mallory v. Eyrich*, 922 F.2d 1273, 1282 (6th Cir. 1991) (citing *Marconi Wireless Tel. Co. v. United States*, 320 U.S. 1, 47–48 (1943)). Accordingly, "district court[s] may modify, or even rescind, such interlocutory orders" for sufficient cause. *Id.* (citing *Simmons Co. v. Grier Bros. Co.*, 258 U.S. 82, 88 (1922)); *see also Rodriguez v. Tenn. Laborers Health & Welfare Fund*, 89 F. App'x 949, 952–53 (6th Cir. 2004) ("District courts possess the authority and discretion to reconsider and modify interlocutory judgments any time before final judgment." (citing *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 12 (1983), as stating that "every order short of a final decree is subject to reopening at the discretion of the district judge")).

Whether motions are made under Rule 54 or Rule 59, which does expressly authorize modification of a final judgment, courts typically "will find justification for reconsidering interlocutory orders whe[re] there is (1) an intervening change of controlling law; (2) new evidence available; or (3) a need to correct a clear error or prevent manifest injustice." *Louisville/Jefferson Cnty. Metro Gov't v. Hotels.com, L.P.*, 590 F.3d 381, 389 (6th Cir. 2009) (quoting *Rodriguez*, 89 F. App'x at 959). This standard "vests significant discretion in the district court." *Rodriguez*, 89 F. App'x at 959 n.7.

In the Rule 59 context, at least, the Sixth Circuit and the Supreme Court have recognized that motions to reconsider "may not be used to relitigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of judgment." *Brumley v. United Parcel Serv., Inc.*, 909 F.3d 834, 841 (6th Cir. 2018) (quoting *Exxon Shipping Co. v. Baker*, 554 U.S. 471, 486 n.5 (2008)). District courts typically apply this standard to motions under Rule 54

as well. *Accord, e.g.*, *Powers v. AutoZoners, LLC*, No. 3:23-CV-00609-RGJ, 2025 WL 2235414, at *2 (W.D. Ky. Aug. 5, 2025) ("As with Rule 59(e), reconsideration under Rule 54(b) may not be employed to relitigate issues or present evidence that could have been introduced earlier." (citing *Johnson v. United States*, No. 3:15-CV-715-DJH-CHL, 2019 WL 236720, at *2 (W.D. Ky. Jan. 16, 2019); *Saunders, v. Ford Motor Co.*, No. 3:14-CV-00594-JHM, 2015 WL 13547825, at *2 (W.D. Ky. Aug. 4, 2015)); *see also Weaver v. Christiansen*, No. 1:19-CV-127, 2020 WL 13750906, at *1 (W.D. Mich. Apr. 13, 2020) (citing *Fleet Eng'rs v. Mudguard Techs., LLC*, No. 1:12-CV-1143, 2013 WL 12085183, at *1 (W.D. Mich. Dec. 31, 2013)).

"The moving party has the burden of showing that reconsideration is warranted, and that some harm or injustice would result if reconsideration were to be denied." *Adkins v. Kroger Ltd. P'ship*, No. 5:18-156, 2018 WL 6613786, at *3 (E.D. Ky. Dec. 18, 2018) (citation omitted).

## II. DISCUSSION

### A. Background

The plaintiff seeks reconsideration of the court's decision granting partial summary judgment to the defendants. The court presumes familiarity with the underlying summary judgment Memorandum and recites here only the background necessary for an understanding of the present motion.

As set forth above, a motion to reconsider is not an opportunity to present new arguments that could have been presented the first time around. Here, the plaintiff has, for the most part, done just that. It does not contend that there has been an intervening change of controlling law, and it has failed to show either a clear error of law or a need to prevent manifest injustice. The plaintiff simply disagrees with the court's ruling, but that is not a viable basis for a motion to reconsider. Instead, as the defendants point out, such disagreements may form the basis for an appeal.

In their summary judgment filings, the defendants produced a chart identifying all of the alleged misrepresentations and omissions on which the plaintiff's fraud claims were premised, drawn from both the pleadings and discovery. The defendants referred to the listed misrepresentations and omissions as "M1," "M2," etc. and "O1," "O2," etc. (*See, e.g.*, Doc. No. 77 at 6 n.5.) In the interest of clarity, the court also adopted this usage. (*See* Doc. No. 125 at 35–36 (charts identifying misrepresentations and omissions).)[1] The plaintiff did not object to the list or identify additional misrepresentations or omissions on which its claims relied, but it did not adopt the defendants' enumeration, somewhat complicating the court's task of identifying what misrepresentations and omissions were adequately pleaded in the Complaint and, of those, which were sufficiently supported by the evidentiary record to survive summary judgment.

Addressing the defendants' motion to dismiss some of the plaintiff's fraud claims based on the alleged misrepresentations and omissions as inadequately pleaded, the court found, based either on the court's own review of the Complaint[2] or on the plaintiff's failure to respond to the defendants' arguments, that the plaintiff "d[id] not intend to pursue claims based on M4, M5, or M9, or on O6 or O8." (Doc. No. 125 at 36–37.)

The next hurdle for the plaintiff's omissions-based claims was the defendants' argument that, under the Supreme Court's holding in *Macquarie Infrastructure Corp. v. Moab Partners, L.P.*, 601 U.S. 257 (2024), the plaintiff could not pursue claims based on purported omissions that

[1] Attached hereto as Appendix A is a chart of the misrepresentations and omissions, as identified by the defendants. (Doc. No. 125 at 35–36 (citing Doc. No. 81-51 at 3–4; Doc. No. 77 at 7 (citing Doc. No. 81-7 at 7–9); Doc. No. 112 at 18).)

[2] In at least one instance, the court noted that, although the plaintiff had not specifically addressed a particular misrepresentation, the court located it in the Complaint. (*See* Doc. No. 125 at 35 (comments regarding M6).)

were not "tethered to specific misrepresentations." (Doc. No. 125 at 33.) The plaintiff objected that *Macquarie* did not apply to its claims because its Complaint

> identifies several representations rendered misleading by defendants' omissions. The complaint asserts Heritage's omission-based claims arise from various statements by defendants concerning: (i) their success (ECF 1 at ¶¶ 67–68, 71–72, & 103); (ii) how Heritage's investment was to be used (Id. at ¶¶ 74–107); (iii) the Funds being separate entities (*Id.* at ¶¶ 70 & 108); (iv) defendants' disciplined approach (*Id.* at ¶¶ 101–102); and (v) the Funds' business model and operations (*See id.* at ¶¶ 74–89).

(*Id.* at 38 (quoting Doc. No. 112 at 19).) The quoted paragraph comprises the totality of the plaintiff's response to the defendants' *Macquarie* argument. As the court observed in the summary judgment Memorandum, this "broad response [did] not address every omission on which the plaintiff's claims are based." (*Id.*) Generously construing the plaintiff's arguments and the record in its favor, however, the court found that O1, O5, O9, and O11 were adequately "tethered" to specifically identified misrepresentations. Regarding O2, O3, and O4, the court found that Heritage had not "identified what representations were rendered false or misleading" by these alleged omissions. (*Id.* at 39.) As to O10 and O12, the court acknowledged that the

> Complaint clearly alleges that the defendants had significantly decreased the number of properties they were acquiring by the time of Heritage's investment in Fund 2. The relevance of these allegations, however, is to show that the defendants knew that Fund 1 was not the "success" that Lance Welch claimed it to be and that the defendants were aware at the time of soliciting Heritage's investment that their business model was not working.

(*Id.* at 39–40.) The court nonetheless concluded that these allegations did not "support an inference that the defendants had an affirmative duty to disclose to Heritage the precise number of properties Fund 1 or WCH had purchased over the course of 2021" or the "amount of cash owed to Fund 1

by WCH."[3] (*Id.* at 40.)

Addressing the factual support for the remaining claims, the court also granted summary judgment to the defendants on part of M6, that "Defendants only invested in properties that, at the outset of the purchase, there must appear to be a 25% spread/margin" (Doc. No. 125 at 40), because the plaintiff failed to "point to evidence that the defendants were purchasing property that did not *appear*, at the front end, to have a '25% spread/margin.' Instead, they were discovering that the Acquisitions Director for Fund 1 had purchased properties that turned out to cost more than anticipated to renovate and were valued, post-renovation, lower than projected." (Doc No. 125 at 40, 41.) The court also granted summary judgment on M9 (that "Defendants would not be compensated in connection with the management of Fund 2"), as the plaintiff failed to present evidence suggesting that this representation was factually false. (*Id.* at 42.)

Ultimately, and with little aid from the plaintiff's cursory briefing, the court granted summary judgment to the defendants on the plaintiff's fraud claims based on M4, M5, part of M6, and M9, and O2, O3, O4, O6, O8, O10, and O12. (*See id.* at 56.)

**B. The Plaintiff's Motion for Reconsideration**

The plaintiff seeks reconsideration of nearly all of these findings. (Doc. No. 135.) The defendants argue in response that the plaintiff fails to show that it is entitled to relief under Rule 54 (Doc. No. 139); the plaintiff's Reply (Doc. No. 140) simply reiterates the arguments in its opening brief, without actually acknowledging the defendants' arguments.

[3] O12 is "Wealth Cap owed Fund 1 $1.7 million at the end of 2021." The court neglected to reference O12 by number but clearly identified it by referring to the "amount of cash owed to Fund 1 by WCH." (Doc. No. 125 at 40.)

*1. O2, O3, O4, O10 and O12*

The plaintiff argues that O2 and O12 should be "reinstated" for the sake of consistency because the facts that support them "parallel the claims the Court found actionable in O1 and O5." (Doc. No. 125 at 3) Similarly, the plaintiff contends that reconsideration of the dismissal of O10 is warranted on the same basis that O1 and O5 survived. (*Id.* at 4.) And it maintains that, because the court sustained O11 as tethered to M7, the court should also reinstate O3 and O4. (*Id.* at 4–5.)

As the defendant points out, however, there was no inconsistency in the court's ruling that O2, O10, and O12 failed under *Macquarie*; the court drew a clear distinction between the "general financial-distress allegations" in O1 and O5 and the "granular accounting details" alleged in O2, O10, and O12, finding that they were not closely related to the same alleged misrepresentations. The plaintiff's argument now is one that it could have, but did not, make in response to the defendants' summary judgment motion. Regardless, the court finds it to be without merit.

Regarding O3 and O4, the plaintiff argues that the court erred in dismissing claims based on these omissions because of the plaintiff's failure to demonstrate Lance Welch's "actual knowledge" of the facts making these omissions actionable. More specifically, Heritage asserts that the "actual knowledge" inquiry is "not a precondition to the duty to correct a half-truth; it is part of the scienter element, which the Court analyzed separately. Just as with O11, the existence of the duty turns on the affirmative representation that defendants chose to make (M7), not on their state of mind at the time they spoke." (Doc. No. 135 at 5.) This argument, too, is one the plaintiff could have made, but did not make, in response to the summary judgment motions.

In any event, O3 and O4 do not rise or fall with O11. O11 is "Heritage's investment would be used to repay other Fund 1 and Fund 2 investors, as well as to make payments to Taylor Welch and Chris Evans." O11 describes the defendants' actual intent at the time of Heritage's investment in 2021. O3 and O4 concern events that took place in early 2022, and the plaintiffs have not

tethered them to actual misrepresentations. Nor have they presented evidence suggesting that Lance Welch had knowledge of those future events or intended that they take place. In other words, "knowing that Fund 1 needed cash is not the same as knowing in December 2021 that only $830,000 would go to property purchases (O3) or that no property would be acquired after January 2022 (O4)." (Doc. No. 139 at 14.) The plaintiff has not established that reconsideration of these claims is warranted.

*2. The Dismissed Portion of M6*

M6 is "Defendants only invested in properties that, at the outset of the purchase, there must appear to be a 25% spread/margin, which afforded for multiple surprises during the renovation process and the ability to still pay investors each month." The court found that, although the plaintiff did not address the defendants' argument that this claim was inadequately pleaded, it was adequately pleaded, at least in part. (Doc. No. 135 at 35.) However, on the merits, while the record supported Heritage's contention that the defendants were aware that WCH's "purported systems and protocols were not being followed," the court found that Heritage did not identify any evidence in the record supporting a conclusion that the defendants were purchasing properties that did not *appear*, on the front end, to have a "25% spread/margin." (Doc. No. 125 at 41 (quoting Doc. No. 112 at 23).) In other words, there was no evidence that that portion of the alleged misrepresentation was untrue. The plaintiff takes issue with that conclusion now, but the evidence it continues to cite—that "acquisitions collapsed" and the "disciplined approach was not being followed" (Doc. No. 125 at 6)—"speaks to back-end performance, not front-end targeting" (Doc. No. 139 at 15). The court, in short, remains unpersuaded. The plaintiff has not established a need to correct a clear error or prevent manifest injustice.

*3. Dismissed Claims: M4, O6, and O8.*

The court dismissed these claims, finding that Heritage failed to specifically address the defendants' arguments that the claims were not adequately pleaded in the Complaint and because the court's independent search of the Complaint failed to locate pleadings sufficient to support them. (Doc. No. 125 at 36–37.) The plaintiff now argues that it *did* address these claims, pointing to places in its summary judgment Response where it at least tangentially referred to evidence in the record bearing on these claims. (*See* Doc. No. 135 at 6–7.) What Heritage fails to do is show that these misrepresentations and omissions were adequately alleged *in the Complaint*. The court's recognition that discovery responses "elaborat[ing]" or "expound[ing] upon" adequately pleaded misrepresentations are not precluded (Doc. No. 125 at 34) does not cure that failure, nor does the plaintiff's belated argument cure its failure to adequately support the claims in its Response to the summary judgment motions. Again, the plaintiff has not demonstrated a need to correct a clear error or prevent manifest injustice.

**C. The Plaintiff's Alternative Request**

In the alternative to reconsideration and reinstatement of the "dismissed misrepresentations [and] omissions," Heritage requests "confirmation that the underlying evidence of those misrepresentations and omissions remains admissible on the surviving claims." (Doc. No. 135 at 9.) The defendants object that it would be premature to make determinations regarding the admissibility of evidence at trial. (Doc. No. 139 at 19.)

The court agrees that it would be premature to make a ruling as to the admissibility of evidence at trial. The plaintiff's alternative request, therefore, will be denied. The court can nonetheless confirm that its summary judgment ruling dismissing certain claims does not, *per se*, require *exclusion* of the evidence relating to such claims. Evidence that is relevant to the remaining claims and otherwise admissible under the Federal Rules of Evidence will generally be admissible

at trial. Either party may file pretrial motions *in limine* seeking the admission or exclusion of anticipated evidence at trial, and either remains free to contest admissibility of any proffered evidence at trial.

## III. CONCLUSION AND ORDER

For the reasons set forth herein, the plaintiff's Motion for Reconsideration (Doc. No. 135) is hereby **DENIED**.

The remaining claim in this matter remains set for trial on January 12, 2027.

It is so **ORDERED**.

ALETA A. TRAUGER
United States District Judge

## APPENDIX A

| M# | Alleged Misrepresentation |
|---|---|
| 1 | "Fund 1 was a commercial success" |
| 2 | "Fund 2 was a new fund and not an extension of or related to Fund 1" |
| 3 | "Defendants were disciplined in their approach" |
| 4 | "Defendants only invested in deals that were more valuable than the cost" |
| 5 | "Defendants only invested in income-producing properties that make sense on day 1" |
| 6 | "Defendants only invested in properties that, at the outset of the purchase, there must appear to be a 25% spread/margin, which afforded for multiple surprises during the renovation process and the ability to still pay investors each month." |
| 7 | "Heritage's investment would be used only for the purposes of purchasing and renovating real estate" |
| 8 | "Heritage's investment would account for no more than half of the total amount invested in Fund 2" |
| 9 | "Defendants would not be compensated in connection with the management of Fund 2" |

| O# | Alleged Omission |
|---|---|
| 1 | "Fund 1 had lost hundreds of thousands of dollars in 2021" |
| 2 | "Taylor Welch and Chris Evans had taken $2.2 million in distributions from Fund 1 in 2020, leaving Fund 1 with just $860,000 in negative equity and approximately $200,000 in cash at the end of that year" |
| 3 | "Only $830,000 of Heritage's $5 million investment would be used to buy properties" |
| 4 | "Fund 2 would not purchase any properties after January 2022" |
| 5 | "Defendants were aware their business model was not working and that Fund 1 was in dire straits financially" |
| 6 | "Defendants contemplated shutting down Fund 1 and Wealth Cap due to their financial struggles in the latter part of 2021" |
| 7 | "Heritage's investment would be comingled with Fund 1 investments" |
| 8 | "Defendants were acquiring properties that fell outside of their (self-described) disciplined acquisition model" |
| 9 | "Heritage's investment accounted for more than half of the capital invested in Fund 2" |
| 10 | "Defendants had significantly decreased the number of properties they were acquiring at the time of Heritage's investment" |
| 11 | "Heritage's investment would be used to repay other Fund 1 and Fund 2 investors, as well as to make payments to Taylor Welch and Chris Evans" |
| 12 | "Wealth Cap owed Fund 1 $1.7 million at the end of 2021" |